**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Gregorio Trevino, and Oralia Trevino | : | |
| | : | |
| Plaintiffs, | : | Case No. 08 CV 1409 |
| | : | |
| v. | : | Judge Robert Dow, Jr. |
| | : | |
| U-Haul International, Inc. U-Haul Company of | : | |
| Florida, Inc., General Motors Corporation, et al. | : | |
| | : | |
| Defendants. | : | |

**GENERAL MOTOR CORPORATION'S ANSWER TO PLAINTIFFS' FIRST
AMENDED COMPLAINT**

General Motors Corporation, by its attorneys, Dykema Gossett, PLLC, provides the

following answer to Plaintiffs' First Amended Complaint as follows:

**I.
PARTIES**

1.1     Plaintiffs, Gregorio Trevino and Oralia Trevino are the surviving parents of Gregorio
Trevino, Jr., deceased.  They are bringing wrongful death arising out the death of the death of
their son. Their claims are being made pursuant to the Texas Wrongful Death Act, Chapter 71,
Subchapter A, Texas Civil Practice and Remedies Code.  Plaintiffs are residents and citizens of
the State of Texas.

ANSWER:     General Motors has no knowledge sufficient to form a belief as to the truth of the

allegations contained in Paragraph 1.1.

1.2     Defendant, U-Haul International, Inc., (hereinafter "UHI") is a Nevada corporation with
its principal office in Arizona.  At all times pertinent to this action, UHI was doing business in
the State of Illinois and has sufficient contacts with Illinois so that it is subject to personal
jurisdiction in Illinois.

ANSWER:     General Motors has no knowledge sufficient to form a belief as to the truth of the

allegations contained in Paragraph 1.2.

1.3     Defendant, U-Haul Company of Florida, Inc. (hereinafter "UHF") is a Florida corporation with its principal office in Florida. At all times pertinent to this action, UHF was doing business in the State of Illinois and has sufficient contacts with Illinois so that it is subject to personal jurisdiction in Illinois.

ANSWER:     General Motors has no knowledge sufficient to form a belief as to the truth of the

allegations contained in Paragraph 1.3.


1.4     Defendant, General Motors Corporation (hereafter "GM") is a Delaware corporation with its principal office in Michigan. At all times pertinent to this action, GM was doing business in the State of Illinois and has sufficient contacts with Illinois so that it is subject to personal jurisdiction in Illinois.

ANSWER:     General Motors admits it is a Delaware corporation with its principal place of

business in Michigan and that it conducts business in Illinois and did so at the time of the alleged

accident. General Motors has no knowledge sufficient to form a belief as to the truth of the

remaining allegations contained in Paragraph 1.4 and/or such allegations state a legal conclusion

to which no response is required.


1.5     Defendant, Janet M. Deutsch, is a resident of Chicago, Illinois. She is properly a defendant as the Special Administrator of the estate of William J. Geary, deceased, for the negligent acts of Mr. Geary.

ANSWER:     General Motors has no knowledge sufficient to form a belief as to the truth of the

allegations contained in Paragraph 1.5 and/or these allegations state a legal conclusion to which

no response is required or appropriate.


1.6     On or about January 24, 2008, Janet Deutsch was appointed Special Administrator of the Estate of William J. Geary, deceased. A copy of the Order from the Circuit Court of Cook County, Illinois is attached hereto as Exhibit "A."

ANSWER:     General Motors has no knowledge sufficient to form a belief as to the truth of the

allegations contained in Paragraph 1.6 and/or these allegations state a legal conclusion to which

no response is required or appropriate.

1.7     Hereinafter, "GM/ U-Haul" refers to UHI, UHF and GM.

ANSWER:     GM denies it is legally or factually correct or appropriate to group the entities

identified in Paragraph 1.7 as a single entity.   To the extent further response is required, the

allegations of Paragraph 1.7 speak for themselves.

## II.
## VENUE AND JURISDICTION

2.1     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.
§1332(a); because this action, which has a controversy in excess of $75,000, is between citizens
of different states.

ANSWER:     General Motors has no knowledge sufficient to form a belief as to the truth of the

allegations contained in Paragraph 2.1 and/or these allegations state a legal conclusion to which

no response is required or appropriate.

2.2     This Court has personal jurisdiction over UHI; UHF and GM, because they are
authorized to and do conduct business in the State of Illinois and have sufficient contacts with
the State of Illinois, both generally and with regard to this specific action, that the exercise of
personal jurisdiction over it is proper. This Court has personal jurisdiction over Geary because at
the time of the death of William Geary, Mr. Geary was a resident and citizen of the State of
Illinois. Moreover, his estate's Special Administrator, Janet Deutsch, is a resident and citizen of
the State of Illinois.

ANSWER:     General Motors admits it conducts business in Illinois and did so at the time of the

alleged incident.   General Motors does not admit this Court has personal jurisdiction or is the

appropriate jurisdiction for this case.   To the extent further response is required, General Motors

has no knowledge sufficient to form a belief as to the truth of the allegations contained in

Paragraph 2.2 and/or these allegations state a legal conclusion to which no response is required

or appropriate.

2.3     This is a proper venue, pursuant to 28 U.S.C, §1391, because all defendants reside in this
judicial district for venue purposes.

ANSWER:     General Motors admits it conducts business in Illinois and did so at the time of the

alleged incident.   General Motors denies that venue in the Circuit Court of Cook County is

proper and/or the best and most appropriate venue for this case.  To the extent further response is

required, General Motors has no knowledge sufficient to form a belief as to the truth of the

allegations contained in Paragraph 2.3 and/or these allegations state a legal conclusion to which

no response is required.


## III.
## BACKGROUND FACTS

3.1     On or about April 21, 2006, Gregorio Trevino, Jr. was driving southbound on Interstate
65 in Kentucky. Mr. Trevino was driving a Celedon tractor-trailer combination.  A 2005 U-Haul
moving truck (VIN 1GDG5C1E35F903934), manufactured by GM/U-Haul and driven by
William Geary from Chicago, Illinois, was traveling northbound on Interstate 65. Without
warning, Mr. Geary lost control, crossed the median and slid across the interstate in front of the
tractor-trailer combination after colliding with another vehicle.  The U-Haul moving truck and
tractor-trailer then collided. Both vehicles burst into flames.  Mr. Trevino, along with both
occupants of the U-Haul moving truck, died as a result of this incident.

ANSWER:     General Motors admits it manufactured, in part, and sold as an incomplete

vehicle, a 2005 model year GMC medium-duty truck, VIN 1GDG5C1E35F903934.   To the

extent the allegations in Paragraph 3.1 are directed at other parties, no response from General

Motors is required or appropriate.  General Motors has no knowledge sufficient to form a belief

as to the truth of the remaining allegations contained in Paragraph 3.1.


## IV.
## STRICT LIABILITY-GM/U-HAUL

4.1     At all times relevant hereto, GM / U-Haul were in the business of selling, manufacturing,
distributing, equipping, designing, leasing, maintaining and/or marketing moving trucks,
including the subject moving truck.

ANSWER:     General Motors admits it designed, in part, manufactured, in part, conducted

certain marketing activities, and sold to their authorized dealers as incomplete vehicles, 2005

model year GMC medium-duty trucks, including for delivery to U-Haul. General Motors specifically admits it designed, in part and manufactured, in part, a 2005 model year GMC medium duty truck, VIN 1GDG5C1E35F903934 and sold this incomplete vehicle to one of its authorized dealers for expected delivery to U-Haul International. General Motors denies it leased or maintained this vehicle after it left General Motors' possession. To the extent the allegations in Paragraph 4.1 are directed at other parties, no response from General Motors is required. To the extent further response is required, General Motors has no knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 4.1.

4.2    The subject moving truck, as sold, manufactured, distributed, equipped, designed, leased, maintained and/or marketed by GM/ U-Haul, was in a defective and unreasonably dangerous condition by reason of its defective design and/or manufacture, including but not limited to, its defective and inadequate fuel tank fuel delivery system, its brakes, its suspension system, its steering system and wheel bearings, all while in the possession, custody or control of GM/ U-Haul.

ANSWER:    To the extent the allegations in Paragraph 4.2 relate to or concern General Motors, denied. To the extent the allegations in Paragraph 4.2 are directed at other parties, no response from General Motors is required. To the extent further response is required, General Motors has no knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 4.2.

4.3    The subject moving truck was in a defective and unreasonably dangerous condition when it left the control of GM/ U-Haul.

ANSWER:    To the extent the allegations in Paragraph 4.3 relate to or concern General Motors, denied. To the extent the allegations in Paragraph 4.3 are directed at other parties, no response from General Motors is required. To the extent further response is required, General Motors has no knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 4.3.

4.4     At the time the subject moving truck was placed into the stream of commerce by GM/ U-Haul, up to the time of the accident, the subject moving truck was defective and unreasonably dangerous to persons who could reasonably be expected to use same.

ANSWER:     To the extent the allegations in Paragraph 4.4 relate to or concern General Motors, denied.  To the extent the allegations in Paragraph 4.4 are directed at other parties, no response from General Motors is required.   To the extent further response is required, General Motors has no knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 4.4.

4.5     The death of Gregorio Trevino, Jr. and Plaintiffs' damages were the direct and proximate result of the subject moving truck's defective and unreasonably dangerous condition.

ANSWER:     To the extent the allegations in Paragraph 4.5 relate to or concern General Motors, denied.  To the extent the allegations in Paragraph 4.5 are directed at other parties, no response from General Motors is required.   To the extent further response is required, General Motors has no knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 4.5.

4.6     Because GM/ U-Haul are in the business of selling, manufacturing, distributing, equipping, designing, leasing, maintaining and/or marketing the subject moving truck and similar products, because GM/ U-Haul reaped the profits from the subject moving truck and similar products and because GM/U-Haul placed the subject moving truck and similar products into the stream of commerce in a defective and unreasonably dangerous condition throughout the United States, as well as the State of Florida; GM/U-Haul are liable to Plaintiffs for their damages arising out of the death of. Gregorio Trevino, Jr. under the theory of strict products liability.

ANSWER:     To the extent the allegations in Paragraph 4.6 relate to or concern General Motors, denied.  To the extent the allegations in Paragraph 4.6 are directed at other parties, no response from General Motors is required.   To the extent further response is required, General Motors has no knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 4.6.

4.7    As a direct and proximate result of the defective and unreasonably dangerous condition of the subject moving truck, which was sold, manufactured, distributed, equipped, designed, leased, maintained, and/or marketed by GM/U-Haul and was in a defective and unreasonably dangerous condition when it left the control of GM/ U-Haul, Gregorio Trevino, Jr., deceased, suffered severe injuries which resulted in his death.

ANSWER:    To the extent the allegations in Paragraph 4.7 relate to or concern General Motors, denied. To the extent the allegations in Paragraph 4.7 are directed at other parties, no response from General Motors is required. To the extent further response is required, General Motors has no knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 4.7.

4.8    Gregorio Trevino, Jr., deceased, has left as his survivors his parents, Plaintiffs Gregorio and Oralia Trevino, who have suffered personal and pecuniary loss as the result of the death of their son, and have suffered from the loss of his love, society and companionship they enjoyed prior to his death and have endured grief, sorrow, and mental suffering.

ANSWER:    To the extent the allegations in Paragraph 4.8 suggest negligence or misconduct by General Motors or liability or responsibility for the alleged accident, injuries and/or damages, denied. To the extent further response is required, General Motors has no knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 4.8.

## V.
## NEGLIGENCE — GM/U-HAUL

5.1    GM/U-Haul carelessly and negligently sold, manufactured, distributed, equipped, designed, leased, maintained, and/ or marketed the subject moving truck, including, but not limited to, with regard to its defective and inadequate fuel tank and fuel delivery system, its brakes, its suspension system, its steering system, and wheel bearings all while in the possession, custody, or control of each of GM/ U-Haul.

ANSWER:    To the extent the allegations in Paragraph 5.1 relate to or concern General Motors, denied. To the extent the allegations in Paragraph 5.1 are directed at other parties, no response from General Motors is required.   To the extent further response is required, General Motors has

no knowledge sufficient to form a belief as to the truth of the remaining allegations contained in

Paragraph 5.1.

5.2    GM/ U-Haul had a non-delegable duty of care to sell, manufacture, distribute, equip, design, lease, maintain, and/or market the subject moving truck such that it was reasonably safe for its intended and reasonably foreseeable uses and for the foreseeable ancillary consequences of its normal use. GM/ U-Haul owed such duty to Plaintiffs' decedent and to the general motoring public.

ANSWER:    General Motors admits to any duty imposed on it by law with respect to the

subject medium-duty truck and denies it breached any such duty.  To the extent the allegations in

Paragraph 5.2 are directed at other parties, no response is required.  To the extent further

response is required, General Motors has no knowledge sufficient to form a belief as to the truth

of the remaining allegations contained in Paragraph 5.2 and/or such allegations state legal

conclusions to which no response is required.

5.3    GM/ U-Haul knew, or in the exercise of reasonable care should have known, that because of their careless and negligent sale, manufacture, distribution, equipping, designing, leasing, maintaining, and/or marketing of the subject moving truck, it was not reasonably safe for its intended and reasonably foreseeable uses and for the foreseeable ancillary consequences of its normal use.  Such foreseeable ancillary consequences include collisions.

ANSWER:    To the extent the allegations in Paragraph 5.3 relate to or concern General Motors,

denied.  To the extent the allegations in Paragraph 5.3 are directed at other parties, no response

from General Motors is required.  To the extent further response is required, General Motors has

no knowledge sufficient to form a belief as to the truth of the remaining allegations contained in

Paragraph 5.3.

5.4    GM/U-Haul knew, or in the exercise of reasonable care should have known, of the means of selling, manufacturing, distributing, equipping, designing, leasing, maintaining, and/or marketing the subject moving truck such that it would not be defective and unreasonably dangerous and such that the type of incident and resulting injuries as described herein would be prevented.

ANSWER:    General Motors admits it exercised reasonable care with respect to the subject medium duty truck, denies any defect existed in this truck when it left General Motors' custody and control and denies that any vehicle can eliminate the risk of injuries in all accidents regardless of the circumstances involved.  To the extent the allegations in Paragraph 5.4 suggest something to the contrary, denied.  To the extent the allegations in Paragraph 5.4 are directed at other parties, no response from General Motors is required.    To the extent further response is required, General Motors has no knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 5.4.

5.5    GM/ U-Haul knew, or in the exercise of reasonable care should have known, of the means of selling, manufacturing, distributing, equipping, designing, leasing, maintaining, and/or marketing the subject moving truck and its components, including but not limited to, its fuel tank and fuel delivery system, its brakes, its suspension system, its steering system, and wheel bearings, such that they would not be defective and unreasonably dangerous and such that the type of incident and resulting injuries as described herein would be prevented.

ANSWER:    General Motors admits it exercised reasonable care with respect to the subject medium duty truck, denies any defect existed in this truck when it left General Motors' custody and control and denies that any vehicle can eliminate the risk of injuries in all accidents regardless of the circumstances involved.  To the extent the allegations in Paragraph 5.5 suggest something to the contrary, denied.  To the extent the allegations in Paragraph 5.5 are directed at other parties, no response from General Motors is required.  To the extent further response is required, General Motors has no knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 5.5.

5.6    GM/ U-Haul failed to adequately sell, manufacture, distribute, equip, design, lease, maintain, and/or market the subject moving truck and its components, including, but not limited to, its fuel tank and fuel delivery system, its brakes, its suspension system, its steering system, and wheel bearings to William Geary, deceased.

ANSWER:    To the extent the allegations in Paragraph 6 relate to or concern General Motors, denied.  To the extent the allegations in Paragraph 5.6 are directed at other parties, no response from General Motors is required.  To the extent further response is required, General Motors has no knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 5.6.

5.7    GM/ U-Haul additionally were careless and negligent in failing to provide adequate or proper warnings or instructions to users of the subject moving truck, and failed to recall or timely recall the subject moving truck or make appropriate post- marketing efforts to prevent incidents such as the one described herein.

ANSWER:    To the extent the allegations in Paragraph 5.7 relate to or concern General Motors, denied.  To the extent the allegations in Paragraph 5.7 are directed at other parties, no response from General Motors is required.   To the extent further response is required, General Motors has no knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 5.7.

5.8    The aforesaid careless and negligent acts or omissions on the part of GM-U-Haul imposed an unreasonable risk of arm on Plaintiffs' decedent and the general motoring public.

ANSWER:    To the extent the allegations in Paragraph 5.8 relate to or concern General Motors, denied.  To the extent the allegations in Paragraph 5.8 are directed at other parties, no response from General Motors is required.  To the extent further response is required, General Motors has no knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 5.8.

5.9    The aforesaid careless and negligent acts or omissions on the part of GM/ U-Haul also represented a deviation from the industry standard of care.

ANSWER:    To the extent the allegations in Paragraph 5.9 relate to or concern General Motors, denied.  To the extent the allegations in Paragraph 5.9 are directed at other parties, no response

from General Motors is required.   To the extent further response is required, General Motors has no knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 5.9.

5.10     As a direct and proximate result of one or more of the aforesaid careless and negligent acts or omissions on the part of GM/ U-Haul, Gregorio Trevino, Jr., deceased, suffered severe injuries which resulted in his death.

ANSWER:     To the extent the allegations in Paragraph 5.10 relate to or concern General Motors, denied.  To the extent the allegations in Paragraph 10 are directed at other parties, no response from General Motors is required.  To the extent further response is required, General Motors has no knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 5.10.

5.11     Gregorio Trevino, Jr., deceased, has left as his survivors his parents, Plaintiffs Gregorio and Oralia Trevino, who have suffered personal and pecuniary loss as a result of the death of their son, and have suffered from the loss of his love, society, and companionship they enjoyed prior to his death.

ANSWER:     To the extent the allegations in Paragraph 5.11 suggest negligence or misconduct by General Motors or liability or responsibility for the alleged accident, injuries and/or damages, denied.  To the extent further response is required, General Motors has no knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 5.11.

## VI.
## NEGLIGENCE — UHI, UHF & GEARY

6.1     UHI, UHF and Geary committed acts of omissions and commission, which collectively and severally constituted negligence. These acts and omissions were a proximate cause of the accident, the injuries to and death of Gregorio Trevino, Jr., and the damages of the Plaintiffs.

ANSWER:     The allegations in Paragraph 6.1 are not directed at General Motors and, therefore, no response is required.  However, General Motors admits that all drivers have a duty

to use ordinary care and caution in the operation of motor vehicles on public roads and highways. To the extent further response is required, General Motors has no knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 6.1.

6.2     UHI's and UHF's acts of negligence that proximately caused the injuries to and death of Gregorio Trevino, Jr.,, and Plaintiffs' damages, include failing to maintain the truck in a good, working condition, which posed a danger to drivers of the truck, other parties sharing the road with the truck and ultimately caused the incident which led to the death of Gregorio Trevino, Jr.

ANSWER:     The allegations in Paragraph 6.2 are not directed at General Motors and, therefore, no response is required. However, General Motors admits that all drivers have a duty to use ordinary care and caution in the operation of motor vehicles on public roads and highways. To the extent further response is required, General Motors has no knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 6.2.

6.3     UHI's and UHF's acts of negligence that proximately caused the injuries to and death of Gregorio Trevino, Jr., and Plaintiffs' damages, include failing to maintain the truck's braking system, which posed a danger to drivers of the truck, other parties sharing the road with the truck and ultimately caused the incident which led to the death of Gregorio Trevino, Jr.

ANSWER:     The allegations in Paragraph 6.3 are not directed at General Motors and, therefore, no response is required. To the extent further response is required, General Motors has no knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 6.3.

6.4     UHI's and UHF's acts of negligence that proximately caused the injuries to and death of Gregorio Trevino, Jr., and Plaintiffs' damages, include failing to ensure the braking system in the truck was operating properly at the time of rental, which posed a danger to drivers of the truck, other parties sharing the road with the truck and ultimately caused the incident which led to the death of Gregorio Trevino, Jr.

ANSWER:     The allegations in Paragraph 6.4 are not directed at General Motors and, therefore, no response is required. To the extent further response is required, General Motors has

12

no knowledge sufficient to form a belief as to the truth of the remaining allegations contained in

Paragraph 6.4.


6.5     UHI's and UHF's acts of negligence that proximately caused the injuries to and death of Gregorio Trevino, Jr., and Plaintiffs' damages, include failing to follow internal procedures or guidelines for maintaining the truck and its braking system, which posed a danger to drivers of the truck, other parties sharing the road with the truck and ultimately caused the incident which led to the death of Gregorio Trevino, Jr.

ANSWER:     The allegations in Paragraph 6.5 are not directed at General Motors and,

therefore, no response is required.  To the extent further response is required, General Motors has

no knowledge sufficient to form a belief as to the truth of the remaining allegations contained in

Paragraph 6.5.


6.6     William J. Geary's acts of negligence that proximately caused the injuries to and death of Gregorio Trevino, Jr., and Plaintiffs' damages, include failing to maintain control of the U-Haul truck after a mechanical failure, which posed a danger to drivers of the truck, other parties sharing the road with the truck and ultimately caused the incident which led to the death of Gregorio Trevino, Jr.

ANSWER:     The allegations in Paragraph 6.6 are not directed at General Motors and,

therefore, no response is required.  To the extent further response is required, General Motors has

no knowledge sufficient to form a belief as to the truth of the remaining allegations contained in

Paragraph 6.6.


6.7     William J. Geary's acts of negligence that proximately caused the injuries to and death of Gregorio Trevino, Jr., and Plaintiffs' damages, include failing to ensure than the U-Haul truck was in proper working condition before embarking on his journey, which posed a danger to drivers of the truck, other parties sharing the road with the truck and ultimately caused the incident which led to the death of Gregorio. Trevino, Jr.

ANSWER:     The allegations in Paragraph 6.7 are not directed at General Motors and,

therefore, no response is required.  To the extent further response is required, General Motors has

no knowledge sufficient to form a belief as to the truth of the remaining allegations contained in

Paragraph 6.7.


## VII.
## GROSS NEGLIGENCE AND EXEMPLARY DAMAGES

7.1    Plaintiffs allege that GM/ U-Haul are guilty of gross negligence for knowingly introducing the subject moving truck into the stream of commerce with a defective and inadequate fuel tank and fuel delivery system, defective brakes, a defective suspension system, a defective steering system and defective wheel bearings.  Plaintiffs, therefore, are entitled to recover exemplary damages from these defendants and seek these damages in an amount far in excess of the minimum jurisdictional limits of this Court.

ANSWER:    To the extent the allegations in Paragraph 7.1 relate to or concern General Motors,

denied.  To the extent the allegations in Paragraph 7.1 are directed at other parties, no response

from General Motors is required.  To the extent further response is required, General Motors has

no knowledge sufficient to form a belief as to the truth of the remaining allegations contained in

Paragraph 7.1.


7.2    Plaintiffs allege that UHI and UHF are guilty of gross negligence for knowingly renting their vehicles to consumers, like Mr. Geary; with improperly Maintained braking systems. Plaintiffs, therefore, are entitled to recover exemplary damages from these defendants and seek these damages in an amount far in excess of the minimum jurisdictional limits of this Court.

ANSWER:    The allegations in Paragraph 7.2 are not directed at General Motors and,

therefore, no response is required.  However, General Motors admits that all drivers have a duty

to use ordinary care and caution in the operation of motor vehicles on public roads and

highways.  To the extent further response is required, General Motors has no knowledge

sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 7.2.


## VIII.
## ACTUAL DAMAGES

8.1    As a result of the injuries to and death of Gregorio Trevino, Jr., Plaintiffs suffered, and will suffer in the future, wrongful death damages including pecuniary loss, loss of companionship and society, and mental anguish.

ANSWER:    The allegations in Paragraph 8.1 are not directed at General Motors and, therefore, no response is required.  To the extent further response is required, General Motors has no knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 8.1.

## IX.
## PRE-JUDGMENT AND POST-JUDGMENT INTEREST

9.1    Plaintiffs seek pre-judgment and post-judgment interest at the maximum legal rate.

ANSWER:    The allegations in Paragraph 9.1 are not directed at General Motors and, therefore, no response is required.  To the extent further response is required, General Motors has no knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 9.1.

## X.
## CONDITIONS PRECEDENT

10.1    All conditions precedent to Plaintiffs' right to recover herein and to Defendants' liability have been performed or have occurred.

ANSWER:    The allegations in Paragraph 10.1 are not directed at General Motors and, therefore, no response is required.  To the extent further response is required, General Motors has no knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 10.1.

## XI.
## JURY DEMAND

11.1    Plaintiffs, who seek damages greater than $75,000, request a trial by a jury.

ANSWER:    General Motors relies on plaintiffs' demand for a jury trial and separately asserts

its own demand for a trial by jury of the above-captioned case.

## AFFIRMATIVE DEFENSES

General Motors has not yet had the opportunity to complete its discovery or investigation of this matter and, therefore, relies upon such of the following defenses as may prove applicable after discovery or at trial:

1.      The First Amended Complaint fails in whole or in part to state a claim upon which relief can be granted against General Motors.

2.      The alleged damages were a result of the misuse, abuse and/or failure to maintain and control the vehicle in question.

3.      The alleged damages were the result of actions by third persons outside the control or supervision of General Motors.

4.      The alleged damages were caused by an intervening and/or superseding cause.

5.      Plaintiffs' decedent was contributory negligent and/or assumed the risk of injury.

6.      To the extent that it is established that the product in question was modified or altered in any manner, any claims against General Motors are barred.

7.      General Motors asserts all defenses available to it under the applicable state product liability law.

8.      General Motors relies on the written warranty given to the first retail purchaser of the subject vehicle.

9.      General Motors denies each allegation that is not specifically admitted to be true.

10.      The vehicle in question, when it left General Motors' control, was consistent with the state of the art and complied with all applicable governmental safety standards.

11.      The substantive or procedural law of another state may be applicable to this action and General Motors reserves the right to file a motion to determine same.

12.      A forum other than the Northern District of Illinois may be the more appropriate and convenient forum applicable to this action and General Motors reserves the right to file a motion requesting transfer of this action to a more appropriate forum.

13.      Plaintiffs' claims may be barred by the applicable statute of limitations.

14.      Plaintiffs' claims may be barred, in whole or part, from recovery due to spoliation of evidence.

15.      Plaintiffs have failed to join parties indispensable to a just adjudication of their claims.

16.      The alleged injuries were the result of unavoidable circumstances.

17.      Plaintiffs failed to allege a claim for which punitive damages can be recovered.

18.      If Plaintiffs sustained damages as alleged,  which General Motors specifically denies, the assessment of exemplary or punitive damages violates General Motors' constitutional rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and the applicable state constitution, in one or more of the following respects:

a.      the guidelines, standards, and/or instructions for assessing exemplary or punitive damages are vague, are indefinite, are uncertain, supply no notice to General Motors of the potential repercussions of its alleged conduct, set no limit on the damages that can be awarded, fail to require proof of every element beyond a reasonable doubt, are subject to the unbridled discretion of the jury, and do not allow adequate judicial review, thereby denying due process;

b.      the assessment of exemplary or punitive damages is criminal or penal in nature, and therefore, the rights given defendants in criminal proceedings are applicable;

c.      the assessment of exemplary or punitive damages amounts to the imposition of an excessive fine and/or cruel and unusual punishment;

d.      the assessment of exemplary or punitive damages exposes General Motors to multiple punishments and fines for the same act;

e.      the assessment of exemplary or punitive damages constitutes double jeopardy;

f.      the assessment of exemplary or punitive damages discriminates against General Motors in that General Motors' corporate status, wealth, or net worth may be considered by the jury in determining the amounts of any such damage awards and different amounts can be awarded against different defendants for the same act depending solely on the status or material wealth of the various defendants, thereby denying equal protection under the law;

g.      the assessment of exemplary or punitive damages does not provide an adequate procedure for the determination of exemplary or punitive damages in violation of the equal protection and substantive and procedural due process requirements of the Pennsylvania

Constitution and the United States Constitution and in violation of the United States Supreme Court's decision in Pacific Mutual Ins. Co. v. Haslip; and

h.    the assessment of exemplary or punitive damages constitutes an impermissible burden on interstate commerce.

19.    Plaintiffs' Amended Complaint fails to allege facts which meet the clear and convincing standard of proof required for recovery of punitive or exemplary damages and/or damages for aggravating circumstances.

20.    Notwithstanding the above, the law of the State of Michigan applies to Plaintiffs' claims for exemplary or punitive damages.

21.    General Motors reserves the right to raise such additional defenses as may become available through investigation and discovery and to adopt and assert any defenses raised or asserted by any other defendant, if any, to this action.

WHEREFORE, General Motors requests plaintiff's First Amended Complaint be dismissed and that a judgment of no cause for action be entered in favor of General Motors, along with costs, attorneys' fees and any other relief deemed appropriate.

By: <u>s/  Katharine N. Dunn</u>
      One of the Attorneys for Defendant,
      General Motors Corporation


Katharine N. Dunn ARDC No. 6282789
Dykema Gossett PLLC
10 S. Wacker Drive, Suite 2300
Chicago, Illinois 60606
(312) 876-1700

## CERTIFICATE OF SERVICE

I, Caressa Gibson, hereby certify that on **June 15, 2008**, I electronically filed the foregoing Defendant's Answer and Affirmative Defenses to Plaintiff's First Amended Complaint with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

        Salvi, Shostick & Pritchard
        Donald McGarrah
        181 West Madison Street, Suite 3800
        Chicago, Illinois 60602

        Watts Law Firm, L.L.P.
        William Maiberger
        Bank of America Plaza, Suite 100
        300 Convent Street
        San Antonio, Texas 78205